REED, Judge
(concurring specially).
I concur in the conclusion and able opinion of Judge Kelly. I would, however, offer the following additional thoughts for whatever assistance they might be to the parties in evaluating the results of our decision.
The legislature of this state has the power to create new counties, article VIII, section 3, Florida Constitution of 1885. In connection with the creation of new counties, the legislature can designate a temporary county seat. This authority is conferred by section 4 of article VIII of the Florida constitution. What this section or article VIII probably contemplated was that the legislature by the special act creating a new county not only would specify a temporary county seat, but would also provide for an election by the people of the county *748 for the purposes of selecting a site for the county seat. County Commissioners of Lake County v. State, 1888, 24 Fla. 263, 4 So. 795. The term “temporary county seat” as used in connection wtih section 4 of article VIII of the Florida constitution, therefore, means a county seat selected by the legislature as distinguished from a county seat selected by the people of the county in accordance with a procedure authorizd by law.
F.S.1967, Chapter 135, F.S.A., provides a means of financing the construction of courthouses and jails and additions thereto. The statutory scheme created by this chapter does not require a vote of the electors of the county in which the improvements are to be constructed although the chapter authorizes the levy of a building tax not to exceed five mills. As shown by the answer filed in this case by the county commissioners of Seminole County, they are in fact proceeding under Chapter 135 of the Florida Statutes to finance the construction of a new courthouse and improvements in the existing jail in Sanford, Florida. This statute, however, does not authorize the financing of the proposed improvements at a temporary county seat. Such was the holding of Dunscombe v. County Commissioners of Martin County, 1929, 98 Fla. 112, 123 So. 523.
The trial court held that Sanford has become the permanent county seat of Seminole County by acquiescence and thus avoided the problem created by the construction placed on F.S.1967, Chapter 135, F.S.A., (formerly Section 2384, et seq., Compiled General Laws, 1927) by Dunscombe v. County Commissioners of Martin County, supra.
The appellees rely on dictum in the case of Martin County v. Hansen, 1933, 111 Fla. 40, 149 So. 616, 618, to support the contention that a temporary seat may become permanent by acquiescence. I do not believe that the significant results which flow from the trial court’s conclusion should rest on such a tenuous foundation as dictum. None of the parties to this cause have directed us to any authority actually holding that an entire electorate can be estopped by acquiescence. Because of the serious consequences of the application of such a rule to an entire populace in a unit of government, this court should not create such a doctrine.
Whatever the elements of estoppel by acquiescence are, there must certainly be some conduct over a substantial period of time that reasonably suggests or implies a consent. 28 Am.Jur.2d, Estoppel and Waivers, § 57. In the special act creating Seminole County the legislature did not provide for a county seat election. For this reason the removal procedure of F.S. 1967, Chapter 138, F.S.A., has been the only means available to its citizens to select a permanent county seat. In my opinion, the failure of the citizens of Seminole County to attempt to change their county seat by utilizing the provisions of F.S. 1967, Chapter 138, F.S.A., does not reasonably imply a consent that Sanford shall be the permanent county seat for the purposes of financing a new courthouse and jail addition under F.S.1967, Chapter 135, F.S.A. There is lacking a solid connection between the asserted negative conduct and the conclusion of consent.
The appellees point with some force to the fact that in 1959 the county financed improvements on its present courthouse and the construction of a new jail under F.S. 1967, Chapter 135, F.S.A. This plan of financing and the evidence of indebtedness issued thereunder were validated by a decree of the circuit court from which no appeal was apparently ■ taken. The transaction is therefore unimpeachable, but it cannot now serve as a basis for a conclusion that the people of the county have lost the right to question the subsequent use of Chapter 135 financing.
My conclusion simply is that F.S.1967, Chapter 135, F.S.A., does not authorize the financing of the proposed improvements when a permanent county seat has not been *749 designated in the manner provided by law. This conclusion rests entirely on Dunscombe v. County Commissioners of Martin County, supra. The result which our de-cisión reaches does not obstruct other lawful means of financing the improvements.